IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL BILLITER, STEVEN BLISS, JR.,
ROBERT BONDS, DONALD BORDENKIRCHER,
JEFFREY BRITTON, NATHAN FERGUSON,
RODGER M. GAMBLE, FREDERICK GARLAND,
EZEKIAL GODDARD, NORMAN GRAY, III,
MICHAEL HELMICK, ROBERT JEWELL,
JASON JOHNSON, EARL LAYTON,
JON R. LITTLETON, BRANDON LONG,
ANTHONY Q. LONG, JAMES McQUAIN,
GARRETT MICHAELS, AARON MILLER,
ROBERT MULLAVEY, JOSHUA POLING,
BILL POWELL, JONATHAN T. REGETS,
JOSEPH L. RICHARDSON, JAMES ROBINSON,
MICHAEL SCHNELLE, JOSHUA SIPOS,
ADAM SPEECE, MICHAEL TOLAND,
ADAM TRAYNOR, SCOTT URBANEK,
ROBERT TUCKER, LUCIAN WEESE,
JOHN DOE and JANE DOE,

  Plaintiffs,

v.            Civil Action No. 5:09CV119
                   (STAMP)

KELLOGG, BROWN & ROOT SERVICES, INC.,
KBR TECHNICAL SERVICES, INC.,
and unknown JOHN DOE defendants,

  Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>
<u>GRANTING DEFENDANTS' MOTION TO DISMISS</u>
<u>PLAINTIFFS' COMPLAINT, FIRST AMENDED COMPLAINT,</u>
<u>AND SECOND AMENDED COMPLAINT;</u>
<u>DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS;</u>
<u>DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS</u>
<u>SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1)</u>
<u>OF THE FEDERAL RULES OF CIVIL PROCEDURE;</u>
<u>DENYING AS MOOT DEFENDANTS' MOTION TO TEMPORARILY</u>
<u>STAY DISCOVERY PENDING RESOLUTION OF MOTION TO DISMISS,</u>
<u>OR IN THE ALTERNATIVE, FOR LIMITED JURISDICTIONAL DISCOVERY;</u>
<u>AND DENYING AS MOOT DEFENDANTS' MOTION FOR ENTRY</u>
<u>OF A "LONE PINE" ORDER PURSUANT TO RULES 16 AND 26</u>
<u>OF THE FEDERAL RULES OF CIVIL PROCEDURE; AND</u>
<u>DISMISSING WITHOUT PREJUDICE UNKNOWN JOHN DOE DEFENDANTS</u>

I. Procedural History

The plaintiffs, thirty-four current and former members of the 1092 Battalion of the West Virginia Army National Guard, filed this action in the Circuit Court of Marshall County, West Virginia, asserting claims of negligence, gross negligence, tort of outrage, negligent infliction of emotional distress, and "intentional tort" against Kellogg, Brown & Root Services, Inc. ("Kellogg"), KBR Technical Services, Inc. ("KBR Technical"), and unknown John Doe Defendants.[1] Thereafter, the defendants removed this civil action to this Court. The defendants then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure Rule ("Rule") 12(b)(2) and 12(b)(3). This Court granted the parties' joint motion for extension of time for the plaintiffs to file an amended complaint and for the plaintiffs to file a response to the motion to dismiss. This Court granted a second motion for extension of time to respond to the defendants' motion to dismiss filed by the plaintiffs. On March 1, 2010, the plaintiffs filed an amended complaint in order to add additional plaintiffs to their cause of action. On March 2, 2010, the plaintiffs filed a second amended complaint to make a

_____

[1]The plaintiffs have not moved to amend their complaint to identify the unknown John Doe defendants. Federal Rule of Civil Procedure 4(m) requires dismissal if the "defendant is not served within 120 days after a complaint is filed." Because the plaintiffs have not yet named these parties in an amended complaint or served these unnamed defendants with a summons within 120 days or moved this Court to extend the period in which to name the defendants, it is ORDERED that the unknown John Doe defendants be DISMISSED WITHOUT PREJUDICE as defendants in this action.

correction as to the status of an additional plaintiff named in the amended complaint.[2]  On March 4, 2010, the defendants filed a motion to dismiss the complaint, the amended complaint, and the second amended complaint pursuant to Rule 12(b)(2) and 12(b)(3). Additionally, Mark Lowes, Vice-President, Litigation for both KBR Technical and Kellogg, attached a declaration in support of dismissal.[3]  The plaintiffs responded to this motion to which the defendants replied.  For the reasons set forth below, the defendants' motion to dismiss the complaint, the amended complaint and the second amended complaint is granted.[4]

## II.  <u>Facts</u>[5]

Kellogg and KBR Technical, American contracting firms working in Iraq, worked on completing a project involving the restoration of the Qarmat Ali water plant in southern Iraq.  From April to June

---

[2]Because the defendants' motion to dismiss (Docket No. 12) relates to dismissal of the original complaint, this Court must DENY AS MOOT that motion to dismiss.

[3]In evaluating whether it has personal jurisdiction to hear a case, a district court may consider affidavits.  <u>In re Celotex Corp.</u>, 124 F.3d 619, 628 (4th Cir. 1997).

[4]As a result of this memorandum opinion and order, this Court DENIES AS MOOT the defendants' motion to dismiss the second amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the defendants' motion to temporarily stay discovery pending resolution of motion to dismiss, or, in the alternative, for limited jurisdictional discovery, and the defendants' motion for entry of a <u>Lone Pine</u> order.

[5]For purposes of deciding this motion, the facts are based upon the allegations contained in the complaint.

2003, the United States military deployed and assigned the plaintiffs to the Qarmat Ali water plant to provide security for the civilian employees and others performing repairs and restoration of the water plant. While providing security to the water plant, the plaintiffs allege that they were exposed to sodium dichromate, a toxic chemical used as an anti-corrosive, which contained nearly pure hexavalent chromium, a carcinogen.

The plaintiffs believe that the defendants knew or should have known about the site contamination and the extreme danger of exposure to the plaintiffs. They allege that the defendants failed to disclose the nature and extent of the contamination and exposure risks and failed to warn the plaintiffs of the dangers of such exposure. They further allege that the defendants failed to protect the health and safety of the plaintiffs and concealed the facts of contamination and the danger of working at Qarmat Ali, even after blood tests confirmed elevated chromium levels. As a result of the defendants' conduct, the plaintiffs allege that they have manifested significant adverse health conditions and experience chemical sensitivities and rashes.

III. <u>Applicable Law</u>

When a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiffs bear the burden of proving the existence of the grounds for

4

jurisdiction by a preponderance of the evidence. <u>Owens-Illinois, Inc. v. Rapid Am. Corp.</u>, (<u>In re The Celotex Corp.</u>), 124 F.3d 619, 628 (4th Cir. 1997) (citing <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989)).

Under a "long-arm" statute, such as West Virginia Code § 56-3-33,[6] a state may enable its courts to exercise personal

---

[6]Section 56-3-33 states, in pertinent part:

(a) The engaging by a nonresident, or by his duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state . . . for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

    (1) Transacting any business in this state;
    (2) Contracting to supply services or things in this state;
        . . .
    (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, <u>only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7),</u>

jurisdiction over non-residents that commit certain acts within the state, or certain acts outside of the state, that have caused injury within the state. See Lozinski v. Lozinski, 408 S.E.2d 310, 315 (W. Va. 1991) ("The intent and benefit of any long-arm statute is to permit the secretary of state to accept process on behalf of a nonresident and to view such substituted acceptance as conferring personal jurisdiction over the nonresident."). Because the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997). Instead, the "statutory inquiry merges with the Constitutional injury," and this Court must determine whether exercising personal jurisdiction is consistent with the due process clause. Id. at 628; see World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).

Due process requires that a defendant receive adequate notice of the suit and be subject to the personal jurisdiction of the court. Id. (citations omitted). The exercise of personal jurisdiction over a non-resident defendant is proper only so long as "minimum contacts" exist between the defendant and the forum

---

subsection (a) of this section may be asserted against him or her.

W. Va. Code § 56-3-33 (emphasis added).

state, "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

If the defendant's contacts with the forum state provide the basis for the suit, those conducts may establish "specific jurisdiction." Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397 (4th Cir. 2003). To determine whether specific jurisdiction exists, this Court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Id. (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002)).

If the defendant's contacts with the state are not the basis for the suit, however, then jurisdiction "must arise from the defendant's general, more persistent, but unrelated contacts with the state." Id. A plaintiff establishes general jurisdiction by showing that the defendant's activities in the state have been "continuous and systematic." Id. (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 & n.9 (1984)).

## IV.  Discussion

### A.  Contacts with West Virginia

#### 1.  Kellogg

Defendant Kellogg is a Delaware corporation with its principal place of business in Texas.  Mark Lowes Decl. ¶ 4.  KBR, Inc.'s Government and Infrastructure business unit, a non-party in this civil action, is an engineering, construction, and services contractor.  Id.  Kellogg is the operating company and contracting entity for that unit.  Id.  Kellogg contracted with the United States Government to provide logistical support to the military in the Middle East.  Id.  Kellogg is registered to do business in West Virginia and Kellogg has an agent for service of process in West Virginia.  Id. ¶ 5.  Kellogg, however, does not currently perform work in West Virginia, nor does it have contracts to perform work in West Virginia.  Id. ¶ 4.  Kellogg does not solicit business in West Virginia, nor does it direct business activities toward West Virginia residents.  Id.  It does not advertise in West Virginia. Further, Kellogg has no offices or other facilities in West Virginia and has no mailing address in West Virginia.  Id.  It has no employees working in West Virginia.  Id.  Finally, Kellogg owns no West Virginia property, pays no West Virginia taxes, and maintains no West Virginia bank accounts.  Id.

2.  <u>KBR Technical</u>

KBR Technical is a Delaware corporation with its principal place of business in Texas. <u>Id.</u> ¶ 6. KBR Technical employs individuals who perform work for KBR related companies. <u>Id.</u> Unlike Kellogg, KBR Technical is not registered to do business in West Virginia. <u>Id.</u> It does have an agent for service in West Virginia. <u>Id.</u> ¶ 9. KBR Technical maintains no offices or other facilities in West Virginia, has no West Virginia mailing address, and has no employees working in West Virginia. <u>Id.</u> ¶ 6. Further, KBR Technical does not solicit business in West Virginia, direct business activities toward West Virginia residents, or advertise in West Virginia. <u>Id.</u> It does not own West Virginia property and maintains no West Virginia bank accounts. <u>Id.</u> KBR Technical employs 5,800 individuals. <u>Id.</u> ¶ 7. Since its start in 1989, KBR Technical has employed approximately 27 people who provided residential addresses in West Virginia. <u>Id.</u> These individuals, however, did not work in West Virginia. <u>Id.</u> KBR Technical does not incur tax liability or pay taxes in West Virginia other than submitting income tax withholdings on behalf of current employees who list permanent West Virginia residential addresses. <u>Id.</u> ¶ 8.

B.  <u>Specific Jurisdiction</u>

The plaintiffs contend that specific jurisdiction exists pursuant to the "effects test" developed by the United States

Supreme Court in <u>Calder v. Jones</u>, 465 U.S. 783 (1984). The effects test requires that the plaintiffs establish that:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

<u>Carefirst</u>, 334 F.3d at 398 n.7. The plaintiffs allege in Count V of their complaint a cause of action for "intentional tort." Essentially, Count V alleges that the defendants intentionally directed their negligent conduct at the plaintiffs. The defendants challenge the validity of this tort. At this stage in the litigation, this Court will accept the allegations in the plaintiffs' complaint as true and will assume, without deciding, that the plaintiffs have met the first prong of the effects test.

As to the second and third prongs, the United States Court of Appeals for the Fourth Circuit has taken a "restrictive" interpretation of <u>Calder</u> and the effects test. <u>JTH Tax, Inc. v. Liberty Servs. Title, Inc.</u>, 543 F. Supp. 2d 504, 508 (E.D. Va. 2008) (citing <u>ESAB Group, Inc. v. Centricut</u>, 126 F.3d 617, 625-26 (4th Cir. 1997)). The plaintiffs acknowledge this in their response, but assert that there "is no true difference between the Fourth Circuit's interpretation of <u>Calder</u> and the interpretation applied by a majority of other courts." This Court does not agree. First, the Fourth Circuit is not in a minority of courts in taking a restrictive view of <u>Calder</u> and the effects test. <u>See</u> <u>United</u>

10

States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 634 (1st Cir. 2001) ("[I]t cannot be enough that the defendant knew when it acted that its victim lived in the forum state."); IMO Indus., Inc. v. Kiekert, AG, 155 F.3d 254, 262-63 (3d Cir. 1988) ("[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy Calder."); Southmark Corp. v. Life Investors, Inc., 851 F.2d 763, 773 (5th Cir. 1988) (concluding that where the location of the plaintiff's business in the forum was a "mere fortuity," that was insufficient to show that the defendant expressly aimed its actions at the forum); Air Products and Controls, Inc. v. Safetech Int'l., Inc., 503 F.3d 544 (6th Cir. 2007) ("[T]he mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong."); General Electric Capital Corp. v. Grossman, 991 F.2d 1376, 1387-88 (8th Cir. 1993) (taking a restrictive view of Calder); Far West Capital, Inc. v. Towne, 46 F.3d 1071 (10th Cir. 1995) (same); Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 95 (D.C. Cir. 2002) (finding that the torturing of two American citizens in Libya did not satisfy the minimum contacts requirement). Secondly, there is a difference of interpretation between the Fourth Circuit's and the Ninth Circuit's interpretation of Calder. See JTH Tax, 543 F.

Supp. 2d at 508 (contrasting the Fourth Circuit's restrictive reading of Calder to the Ninth Circuit's broad reading of Calder).

The plaintiffs argue that the defendants knew that the plaintiffs were from West Virginia and would presumably return to West Virginia. The plaintiffs believe that because their alleged diseases manifested in West Virginia, that defendants directed their conduct into West Virginia and West Virginia is the focal point of the harm. The plaintiffs provide no support for this contention. In this case, the alleged injury occurred in Iraq. The tort does not relocate to wherever any of these plaintiffs chooses to reside, even though the effects of the alleged injury may be felt there. See ESAB Group, 126 F.3d at 626 (stating that jurisdiction does not depend on a plaintiff's decision about where to establish residence as the plaintiff always feels the impact of the harm where he resides).

As to the last prong of the test, this Court concludes that West Virginia is not the focal point of the tortious activity. The plaintiffs argue that the defendants expressly aimed their alleged tortious actions at West Virginia because the defendants knew that the plaintiffs were from West Virginia and were likely to return to West Virginia.

This Court finds that the plaintiffs cannot show that the defendants expressly targeted West Virginia. The plaintiffs want this Court to follow the court in Bixby v. KBR, Inc., 2010 WL

1499455 (D. Or. Apr. 12, 2010), in holding that this Court has jurisdiction pursuant to Calder. The magistrate judge in Bixby stated that because the KBR defendants knew that the plaintiffs were soldiers from Oregon, they expressly aimed their misrepresentation at Oregon. This Court, however, is bound by Fourth Circuit precedent. The plaintiffs have failed to show that the defendants expressly aimed their alleged tortious conduct at West Virginia. National Guard soldiers from other states were affected by the defendants' alleged actions. Id.; McManaway v. KBR, Inc., --- F. Supp. 2d ----, 2010 WL 724599 (S.D. Ind. Feb. 25, 2010); Bootay v. KBR, Inc., 2010 WL 1257716 (W.D. Pa. March 26, 2010). This Court agrees with the Southern District of Indiana, which found that the "Defendants 'targeted' any and all individuals passing through Qarmat Ali -- that some of those individuals happened to be residents of [this state] was merely fortuitous." McManaway, 2010 WL 724599 at *7. Despite the Seventh Circuit's broad interpretation of Calder, the Southern District of Indiana concluded that the plaintiff's argument was "simply too tenuous" to conclude that the defendant expressly targeted the state.

This Court concludes that the plaintiffs have not shown that the defendants acted with the "manifest intent" of targeting West Virginians. Carefirst, 344 F.3d at 400. The fact that the defendants allegedly injured National Guardsmen from West Virginia was "merely fortuitous." While the place that the plaintiffs feel

an alleged injury is relevant to the jurisdictional inquiry, "it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." ESAB Group, 126 F.3d at 626. The plaintiffs completely rely on the effects test and have not shown that the exercise of jurisdiction comports with the requirements of due process.

C.   General Jurisdiction

In order for this Court to have general jurisdiction over the defendants, the plaintiffs must show that the defendants' contacts with West Virginia are "continuous and systematic." Helicopteros, 466 U.S. at 416. The "threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." ESAB Group, 126 F.3d at 623. This Court assesses jurisdiction as to each defendant separately. Rush v. Savchuk, 444 U.S. 320, 332 (1980).

Before this Court considers whether general personal jurisdiction exists for each defendant, it must address the plaintiffs' contention that general personal jurisdiction should be assessed by looking to KBR, Inc. and all of its subsidiaries as one company. Kellogg, Brown & Root, LLC ("KBR LLC"), a subsidiary of KBR, Inc., entered into a contract in November 2009 to provide construction maintenance, construction management, and other plant services to E.I. duPont Nemours and Company in West Virginia. The plaintiffs assert that this Court should perform an elaborate

14

piercing of the corporate veil in order to attain general jurisdiction over the defendants. The plaintiffs contend that all KBR related entities are essentially one company. The plaintiffs, therefore, want this Court to pierce the corporate veil between non-party KBR, Inc. and non-party KBR LLC and again between KBR, Inc. and each of the defendants. At that point, the plaintiffs claim that there is no distinction between the parent and any subsidiary and that any subsidiary's contacts with West Virginia can be imputed to any other subsidiary of KBR, Inc.

West Virginia "law presumes that two separately incorporated businesses are separate entities." S. Elec. Supply Co. v. Raleigh County Nat'l Bank, 320 S.E.2d 515, 523 (W. Va. 1984). To overcome the presumption in this case, the plaintiffs argue that all of the stock of the defendants is held by KBR Holdings, LLC or KBR Group Holdings, LLC; the defendants share officers and directors; the finances of the defendants, as well as those of other KBR, Inc. subsidiaries, flow upward; profits and losses are joined in a consolidated filing for KBR, Inc.; the defendants' only customer is other KBR related entities; and the actions and conduct of each of the defendants, as well as all KBR related entities, is directed from the top down, and all employees of all KBR related entities perform work on behalf of KBR as a whole.

The plaintiffs cite Toney v. Family Dollar Stores, Inc., 273 F. Supp. 2d 757, 761 (S.D. W. Va. 2003), which in turn cites Bowers

15

v. Wurzburg, 501 S.E.2d 479, 490 (W. Va. 1998).  Bowers is not controlling in federal district court as it lays out eleven factors for West Virginia courts to consider when determining whether a parent company is subject to jurisdiction, a procedural issue. Instead, this Court looks to the substantive law of West Virginia. Piercing the corporate veil through the alter ego doctrine was created "to prevent injustice when the corporate form is interposed to perpetrate an intentional wrong, fraud or illegality." S. Elec. Supply Co., 320 S.E.2d 515, 521-22 (W. Va. 1984).  West Virginia courts apply this "complicated" doctrine "gingerly."  Id.  The burden of proof is on the party soliciting the court to disregard the corporate structure -- "[i]t is not easily proved."  Id. at 522.

This Court may pierce the corporate shield "to make a corporation liable for behavior of another corporation within its total control."  Id.  This examination must be made on a case-by-case basis with particular attention to factual details.  Id. at 523.  West Virginia courts have identified several factual details to look to in making this determination:

> total control and dominance of one corporation by another or a shareholder; existence of a dummy corporation with no business activity or purpose; violation of law or public policy; a unity of interest and ownership that causes one party or entity to be indistinguishable from another; common shareholders, common officers and employees and common facilities.

16

<u>Id.</u>  This Court must analyze this evidence "in conjunction with evidence that a corporation attempted to use its corporate structure to perpetrate a fraud or do grave injustice on an innocent third party seeking to 'pierce the veil.'"  <u>Id.</u>

Despite viewing the facts alleged in the complaint as true and resolving all factual disputes in favor of the plaintiffs, the plaintiffs do not submit sufficient evidence to overcome the presumption in this case.  The plaintiffs first point to the fact that the stock of KBR, Inc.'s subsidiaries is held by two holding companies.  "Nothing in [West Virginia's] law prohibits one man or group from . . . owning two separate corporations with common purposes."  <u>Id.</u> at 524.  The plaintiffs also argue that the shared officers and directors, the "upward flow" of finances, the consolidated filings of losses and profits, the "one customer," and the work being directed from the top down should cause this Court to pierce the corporate veil.  Common ownership and common management, without evidence of fraudulent conduct, <u>total</u> control, or a "dummy" corporation, does not justify piercing the corporate veil.  <u>Id.</u>  While the plaintiffs may have shown that the KBR, Inc. subsidiaries are related, they have not shown that the corporations share the same purpose.  Even if this Court pierced the corporate veil between KBR, Inc. and KBR LLC and then pierced the corporate veil between KBR, Inc. and each of the defendants, the plaintiffs have given this Court no reason to then impute KBR LLC's conduct to

the defendants.[7]  The plaintiffs have provided this Court with no information that KBR LLC has <u>total</u> control over either of the defendants or that either of the defendants has <u>total</u> control over KBR LLC that would allow this Court to find that KBR LLC is the alter ego of Kellogg or KBR Technical.  <u>Id.</u>  This Court has seen no evidence that any subsidiary company is undercapitalized.  <u>Id.</u> There is also no proof that funds are commingled.  <u>Id.</u>  The plaintiffs state that each of the subsidiaries report their profits and losses in a consolidated report.  This does not show commingling of funds and is in fact considered appropriate under Generally Accepted Accounting Principles.[8]  Accordingly, this Court finds that the plaintiffs have not shown that KBR LLC is so organized and controlled as to be a mere adjunct or instrumentality of Kellogg or KBR Technical.  <u>Id.</u>  Thus, this Court will not pierce the corporate veil and will analyze whether general jurisdiction may be exercised over each defendant in this case.

---

[7]Because KBR, Inc. is not a party in this case, this Court will not discuss this issue in detail.  The plaintiffs, however, have not provided this Court with any information to show that the relationship between KBR, Inc. and KBR LLC was anything more than a normal subsidiary -- parent holding company relationship.

[8]<u>E.g.</u>, Consolidated Financial Statements, Accounting Review Bulletin No. 51, ¶ 3 (1959) ("All majority-owned subsidiaries . . . shall be consolidated except [for subsidiaries that the majority-owner does not control].")

1. <u>Kellogg</u>

Kellogg is registered to do business in West Virginia and Kellogg has an agent for service of process in West Virginia. These contacts with West Virginia are not sufficient to establish general personal jurisdiction. <u>Ratliff v. Cooper Labs., Inc.</u>, 444 F.2d 745, 748 (4th Cir. 1971).

2. <u>KBR Technical</u>

Since its creation in 1989, KBR Technical has employed approximately 27 people who provided residential addresses in West Virginia. These individuals, however, did not work in West Virginia. The plaintiffs also identify 500 flights into and out of West Virginia airports paid for by defendant KBR Technical. These contacts with West Virginia are not sufficient to establish general personal jurisdiction. <u>See</u> <u>id.</u> at 746, 748 (finding that a company that maintained five "detail men" who lived in the state and promoted the company's products through personal contacts with professionals and stores throughout the forum state did not have sufficient minimum contacts to have general personal jurisdiction). This Court also finds unpersuasive the plaintiffs' arguments that because an employee of KBR Technical took a master electrical exam in West Virginia, KBR Technical can be said to have continuous and systematic contacts with the forum. Finally, this Court finds the plaintiffs' contention that there is general jurisdiction over the defendants because of the mere fact that KBR entities have been

sued in West Virginia courts approximately on 25 occasions unpersuasive to exercise personal jurisdiction over the defendants. This Court agrees with the defendants that just because a party is sued on multiple occasions in a state does not establish personal jurisdiction in that state.

Because this Court finds that it lacks personal jurisdiction over the defendants, it does not need to address the defendants' argument that there is a more appropriate venue for this civil action.

## IV.   Conclusion

For the reasons stated above, the motion to dismiss the complaint, the amended complaint and the second amended complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction (Docket No. 25) is hereby GRANTED.  The defendants' motion to dismiss (Docket No. 12), the defendants' motion to dismiss second amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Docket No. 32), the defendants' motion to temporarily stay discovery pending resolution of motion to dismiss, or in the alternative, for limited jurisdictional discovery (Docket No. 33), and the defendants' motion for entry of a Lone Pine order (Docket No. 35) are DENIED AS MOOT.  The unknown John Doe defendants are DISMISSED WITHOUT PREJUDICE.  Accordingly, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:   July 21, 2010

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE